HIBBARD *et al.* v. CRAYCRAFT *et ux.*

No. 1206.　Opinion Filed November 18, 1911.

Rehearing Denied February 6, 1912.

(121 Pac. 198.)

1. **FORCIBLE ENTRY AND DETAINER** — Jurisdiction of Proceedings—Justice of the Peace. A justice of the peace has original jurisdiction to hear and determine actions of forcible entry and detainer.

2. **EVIDENCE**—Documentary Evidence—Certified Copy. A copy of an official letter from any department of the government of the United States, received by the register or receiver of a United States land office, otherwise competent, is admissible in evidence, when duly certified by the register or receiver having the legal custody of same, to the same effect as would the original under section 5904, Comp. Laws 1909.

3. **FORCIBLE ENTRY AND DETAINER**—Right of Action—Statutory Provisions—''Color of Title.'' A successful contestant for homestead entry on government lands, who has made proper filing of his homestead entry after the final determination of his contest, is entitled to the undisturbed possession of the lands filed upon; and may proceed before a justice of the peace, in an action of forcible entry and detainer, against the unsuccessful contestant, and those in possession, under a claim of license from such unsuccessful contestant, and such unsuccessful contestant, and those persons in possession under him, after a final determination of the contest adverse to him, are mere trespassers, in possession without ''color of title,'' within the meaning of section 6430, Comp. Laws 1909 (Sess. Laws 1907-08, sec. 3, p. 459).

(Syllabus by Brewer, C.)

*Error from Kiowa County Court;*
*J. W. Mansell, Judge.*

Action by Floyd O. Hibbard and others against R. Craycraft and wife. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

*C. A. Morris,* for plaintiffs in error.

*J. W. Bartholomew,* for defendants in error.

Opinion by BREWER, C. This is an action originally brought by plaintiffs in error, as plaintiffs, against defendants

in error, as defendants, before a justice of the peace of Kiowa county. On the 12th day of August, 1908, the cause was tried and judgment rendered in favor of plaintiffs in error, hereinafter called plaintiffs. From this judgment, defendants in error, hereinafter called defendants, appealed to the county court of Kiowa county. A trial was had in the county court on the 14th day of November, 1908, before the court and a jury. Upon conclusion of the testimony, each side moved the court to instruct a verdict in its favor. The motion of plaintiffs was denied and exception saved. The motion of defendants was sustained, and the court directed the jury to return a verdict in favor of defendants, on the ground of "a want of jurisdiction," which it did. Plaintiffs excepted and filed motion for new trial; this motion was overruled and plaintiffs excepted, and bring the cause to this court for review.

The allegations of plaintiffs' petition are substantially as follows: The plaintiffs allege that Floyd O. Hibbard, one of the heirs of Martin J. Hibbard, deceased, and acting for all of such heirs, did, on July 7, 1908, make homestead entry for said heirs, at the United States land office, at Lawton, Okla., of the S. W. ¼ of the N. E. ¼ of section 22, township 4 N., range 17 W., of the Indian base and meridian, in Kiowa county, Okla., and that said heirs are entitled to the immediate possession of such land; that the defendants made unlawful entry, and unlawfully and forcibly detain certain parts of said land (particularly described). Plaintiffs allege they served proper written notice to vacate on the defendants more than three days before filing suit, attach copy of said notice, with sworn return of service, to their petition as part thereof, pray for restitution of the premises so detained, and for costs.

The defendants filed answer, consisting of a general denial, and for further defense stated:

"Defendants allege that they did not enter said premises by force, but peaceably and lawfully; that they purchased or contracted to purchase said land from the townsite company; that all of the occupants of the land in question occupy the town of Wildman upon the invitation, license, and consent of the Gold

Coin Mining Company, while that same was held as mining property, and pending the application to have segregated for town-site purposes."

The proof showed that, on November 14, 1903, application was made at the United States land office to enter the land in controversy as the town site of Wildman, and proof was submitted thereon on January 7, 1904. On December 26, 1903, Martin J. Hibbard, the ancestor of plaintiffs, filed his homestead application for these lands. This application for homestead entry was rejected. On January 6, 1904, a large number of persons filed protest against the application for town-site entry. On January 25, 1904, Hibbard appealed from the order rejecting his homestead application. Hibbard's rejected homestead application and appeal, and the proof on the town-site application and protest thereto, were forwarded to the United States Land Commissioner, where the same was considered and returned to the local land office, and a hearing ordered on the town-site application and protest, and granting Hibbard the right to appear as a protestant. Notice was given all parties. Hearing was finally had on January 30, 1908, and the register and receiver of the United States land office at Lawton, Okla., rendered a decision in the case, finding that:

"It appears that the tract is used as a mere stopping place for transients, and in no way used and occupied in good faith for a town. No business of any kind appears to be transacted on the land, not even a post office, or a store or shop of any kind. There is no call for or need of a town on the land. There is a town and post office at Cold Springs, on the railroad, only two miles from the land, and the larger town of Roosevelt is not over four miles distant. The probate judge and occupant have neglected and refused to furnish plats in triplicate, or otherwise showing that land has been surveyed into blocks, lots, reservations, etc., and neglected to comply with other requirements. It is not necessary to further discuss this matter, more than to say that, having failed in every particular to show valid town-site occupancy and compliance with other requirements, the town-site proof is rejected, and it is recommended that the heirs of protestant M. J. Hibbard, based on his original application, be allowed to make entry for the land."

No appeal was taken from this decision. This decision of the local land office was then reviewed by the General Land Office, through its acting Commissioner, and on June 16, 1908, the decision was in all things sustained. In the letter approving the decision, the following appears:

"Your decision, therefore, is considered final, as to the facts, under rule of practice 48. * * * In view of all the foregoing, I concur in your conclusions of law expressed in your decision, and direct that you notify said heirs of their right to make homestead entry of said lands," etc.

On July 7, 1908, plaintiffs made homestead entry of the lands, as shown by receipt and certificate of the register and receiver of the land office. Plaintiffs gave legal notice to the defendants to vacate; they refused, and this suit was brought.

One of the defendants testified that he went on to the land on the 6th day of August, 1901, built a house on it, and had lived on the land ever since. He claimed he got permission to build from the Gold Coin Mining Company, and paid it a small amount of money for such permission. It appears that this company went out of business, and probably out of existence. It is not claimed that it ever got title.

It appears defendant went on the land at the invitation and under license from the Gold Coin Mining Company; that he contracted to purchase same from the town-site company, and remained there, pending the application to have the same segregated for town-site purposes, as shown by his answer. He was a mere licensee; he could acquire no greater rights in the property than those under whom he entered had, or might acquire. If their right or claims failed, his necessarily failed. The town-site application was unsuccessful. This fixed the status of the town-site applicants, and defendants holding under them, as "unsuccessful contestants," within the meaning of the decisions of the Oklahoma Territorial Supreme Court and of this court hereafter noted.

In *Brennan et al. v. Shanks,* 24 Okla. 563, 103 Pac. 705, the syllabus reads:

"2. Where two claimants to a lot, by virtue of the Creek agreement of March 1, 1901 (Act Cong. March 1, 1901, c. 676, 31 Stat. 861), have their rights finally disposed of before the Secretary of the Interior, and such lot has been finally awarded to one of the claimants, such successful claimant then and there becomes entitled to the undisturbed possession of such lot as against the unsuccessful claimant, and by refusing to vacate the lot and continuing to occupy the same such unsuccessful claimant becomes a trespasser, and his possession is wrongful; and the court will give effect to the decision of the Secretary of the Interior in a forcible entry and detainer action.

"(a) Whilst the unsuccessful claimant may have a right in a court of equity to have reviewed the decision of the Secretary of the Interior, where, by a misconstruction of the law applied to the facts, the title is erroneously awarded to the wrong claimant, yet this equitable relief cannot be had in a forcible entry and detainer action.

"(b) The unsuccessful claimant, as a settler and occupier of such lot, is without color of title, within the purview of section 5087, Wilson's Rev. & Ann. St. 1903; chapter 67, art. 13, sec. 160, Code Civ. Proc."

The statute, relating to forcible entry and detainer, in force now and at the time of filing this suit is, on the point involved, the same as section 5087, Wilson's Rev. & Ann. St. 1903, *supra.* See Comp. Laws 1909, sec. 6430.

In the *Brennan v. Shanks* case, *supra,* it is further said:

"The Supreme Court of the territory of Oklahoma has uniformly held that, where two parties have been claimants to a tract of public land, and their claims have been finally disposed of in the Land Department, and the successful claimant has been permitted to make homestead entry, such entryman then and there becomes entitled to the undisturbed possession of the tract as against the unsuccessful contestant, and that unsuccessful contestant, by refusing to vacate the land and continuing to occupy the same, becomes a trespasser, and his possession is wrongful; and the courts will give effect to the decision of the Land Department, so long as the title is in the United States. *Wodrull v. Wallace,* 3 Okla. 355, 41 Pac. 357; *Reaves v. Oliver,* 3 Okla. 62, 41 Pac. 353; *Barnes v. Newton,* 5 Okla. 428, 48 Pac. 190 [49 Pac. 1074]; *Cox v. Garrett,* 7 Okla. 375, 54 Pac. 546; *Calhoun v. McCormack,* 7 Okla. 347, 54 Pac. 493; *Glover v. Swartz,* 8 Okla. 642, 58 Pac. 943; *McDonald v. Brady,* 9

Okla. 660, 60 Pac. 509; *Barnett v. Ruyle,* 9 Okla. 635, 60 Pac. 243; *Cope v. Braden,* 11 Okla. 291, 67 Pac. 476; *Brown v. Hartshorn,* 12 Okla. 121, 69 Pac. 1049; *Bilyeu et ux. v. Pilcher,* 16 Okla. 228, 83 Pac. 546."

Under the laws of this state, a justice of the peace has jurisdiction to try and determine actions in forcible entry and detainer. *Zahn v. Obert,* 24 Okla. 159, 103 Pac. 702; *Crump v. Pitchford,* 24 Okla. 808, 104 Pac. 911; *Lynn v. Jackson,* 26 Okla. 852, 110 Pac. 727; *Vansellous v. Huene,* 26 Okla. 243, 108 Pac. 1102.

Section 3, Sess. Laws 1907-08, p. 459 (Comp. Laws 1909, sec. 6430), under title "Forcible Entry and Detainer," reads:

"Sec. 6430. Proceedings under this article may be had in all cases against tenants holding over their terms; in sales of real estate on executions, orders or other process, when the judgment debtor was in possession at the time of the rendition of the judgment or decree, by virtue of which such sale was made; in sales by executors, administrators, guardians and on partition, where any of the parties to the partition were in possession at the commencement of the suit, after such sales, so made, on execution or otherwise, shall have been examined by the proper court, and the same, by said court, adjudged legal; and in cases where the defendant is a settler or occupier of lands and tenements without color of title, and to which the complainant has the right of possession. This section is not to be construed as limiting the provisions of the first preceding section."

This case comes clearly under the above statute, and that clause of it wherein it is provided that the action may be maintained by the owner of premises against a settler or occupier thereof without color of title. *Brennan v. Shanks, supra.* The plaintiffs, under the final decision of the United States Land Department, had the right to the possession of the lands as against the town-site applicants, and as against the defendants claiming to hold under license from such applicants.

In the case of *Black v. Jackson,* 177 U. S. 362, 20 Sup. Ct. 653, 44 L. Ed. 806 (*Black v. Jackson,* 6 Okla. 751, 52 Pac. 406), the Supreme Court of the United States said:

"And we cannot find that that court has in any case withdrawn or qualified the ruling that an entryman, out of posses-

sion and having a decision by the Land Office in his favor, may proceed against his adversary in possession by an action in forcible detainer, and thus obtain possession without resorting to the extraordinary remedies used by courts of equity.    According to the decision of that court, Black, as between himself and his successful adversary, was in possession without color of title.    Now, by the statutes of the territory, in the article relating to forcible entry and detainer, if it be found that lands and tenements, after a lawful entry, 'are held unlawfully,' then the justice 'shall cause the party complaining to have restitution thereof;' and it is provided that proceedings under that article may be had in all cases 'where the defendant is a settler or occupier of lands and tenements, without color of title, and to which the complainant has the right of possession.' "

The trial court sustained an objection to the introduction in evidence of the certified copy of the letter decision of the General Land Office.    This was error.    Section 5904, Comp. Laws 1909, reads:

•    "Copies of all papers and documents lawfully deposited in the office of the register or receiver of any land office of the United States within this state, and copies of any official letter or communication, received by the register or receiver of any such land office, from any department of the government of the United States, when duly certified by the register or receiver having custody of such paper, letter, document or other official communication, shall be received in evidence in the same manner and with like effect as the original."

This was probably because the defendants were not shown to have been in the town-site contest, but the answer of defendants establishes for them a status depending on that of the town-site applicants; and the final decision of the United States Land Department, adverse to the town-site applicants, concluded these defendants from holding under the town-site claims, as they allege, for defense, they were doing.

The question of whether or not the defendants were possessed of equities was not involved.    This kind of action (forcible entry and detainer) is purely an action at law, and cannot and does not involve the exercise of equitable jurisdiction.    The right of possession is the only question involved.    *Cope v.*

*Braden,* 11 Okla. 291, 67 Pac. 476; *Vansellous v. Huene,* 26 Okla. 243, 108 Pac. 1102.

Having examined the evidence in this case, and the law applicable, we come to determine whether the court erred in directing the jury to return a verdict for defendants, and if this was error, whether it erred again in not directing a verdict for plaintiffs. ˙We think it erred in both propositions. The plaintiffs showed themselves to be entitled to the possession of the lands in suit. The defendants wholly fail to show that they were other than trespassers, persons on the land without color of title, refusing to surrender possession. The court had jurisdiction of the subject-matter of ,and the parties to the suit. The request of the defendants for an instructed verdict in their favor should have been denied. That of plaintiffs for an instructed verdict in their favor should have been sustained.

The cause, therefore, should be reversed, and remanded for proceedings in conformity with this opinion.

By the Court: It is so ordered.